IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEIDRA WYNNE | § § | |
| Plaintiff | § § | A19CV0739 LY |
| v. | § § | |
| | § | |
| JUBILEE ACADEMIC CENTER, INC | § | |
| BLAKE SCHNEIDER | § | |
| SAM COFER | § | |
| | § | |
| Defendants | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, DEIDRA WYNNE, files this action against Defendants Jubilee Academic Center, Inc, Sam Cofer and Blake Schneider, and by way of complaint against Defendants alleges the following:

### I. Nature of Action

1. This jury action seeks redress for Defendants' willful violations of the laws of the United States in connection with interference and discriminatory acts and omissions, unlawful termination and post-employment retaliation exacted as Plaintiff:

    A. attempted to exercise "*in loco parentis*" caregiver provisions of the Family and Medical Leave Act ("FMLA") 29 U.S.C § 2601 *et. seq.*, and

    B. opposed said violations

2.     Plaintiff prays for and demands all legal and equitable relief, including back pay, front pay, lost benefits, liquidated damages, prejudgement and postjudgment interest, court costs, attorney fees incurred in the event Plaintiff should secure representation at any stage of this civil action, and any and all relief determine appropriate by The Court.

## II. Parties

3.     Plaintiff Deidra Wynne ("Ms. Wynne", or "Wynne", or "Deidra", or "Dee Dee") is female and a registered voter in this judicial district, the Western District of Texas, residing in Williamson County: 108 Ridgewood Dr., Georgetown, Texas, 78628. Ms. Wynne is a teacher.

4.     Defendant Jubilee Academic Center ("Jubilee" or "JAC") is a Public Charter School Corporation, headquartered at 4434 Roland Rd, San Antonio, Texas, 78222. Plaintiff is informed and believes that Jubilee operates approximately eleven public charter schools in Austin, San Antonio, Brownsville, Kingsville, and Harlingen, Texas.

5.     Jubilee employs more than 50 employees in a 75 mile radius of Wynne's former campus, and is "covered employer" in accordance with FMLA 29 U.S.C.§ 2611(4)(A)(i).

6.     Jubilee is "covered employer" under 29 C.F.R. § 825.104(a) and 29 C.F.R § 825.600(b), irrespective of number of employees, as it operates public elementary and secondary schools.

7.     Ms. Wynne was employed on a 220-day per year work assignment with Jubilee for two years beginning on or about August 7, 2014 and until abrupt termination on August 19, 2016.

8,   Ms. Wynne is "eligible employee" pursuant to 29 U.S.C.§ 2611(2)(A), having exceeded 1,250 hours worked as Jubilee's employee at "Athlos Leadership Academy, Austin" in the 12 month period immediately preceding assertion of FMLA participation and protection.

9.   David Sam Cofer ("Sam" or "Cofer") served as Jubilee Director of Human Resources throughout Wynne's time as compensated employee.  Plaintiff is informed and believes Mr. Cofer's residence to be in Guadalupe County, 461 Silver Buckle Dr., Schertz, Tx, 78154.

10.   Sam Cofer is "employer" under U.S.C. 29 § 2611 (4)(ii)(l), as he acts directly or indirectly in the interest of Jubilee to employees of Jubilee by:  controlling conditions of employment, determining the rate and method of payment, and maintaining employment records.

11.   Blake Schneider ("Schneider" or "Blake") began employment with Jubilee as Assistant Director of Athlos Leadership Academy, the Jubilee campus on which Ms. Wynne reported, beginning on or about January, 2015 and through the duration of Wynne's paid employment.

12.   Plaintiff is informed and believes that Blake Schneider resides in Williamson County, 1801 Tanner Loop, Taylor, Tx, 76574.

13.   Mr. Schneider is "employer"in his capacity as he: hired and fired employees, supervised and controlled employee work schedules and conditions of employment, retained records, and acted directly and indirectly in the interest of Jubilee to employees of Jubilee in accordance with FMLA U.S.C. 29 § 2611 (4)(ii)(l).

### III. Jurisdiction and Venue

14. This Court has federal question jurisdiction over the subject matter of Plaintiff's claims having arisen under federal laws 29 U.S.C.§ 2617 and 28 U.S.C. § 1331. .

15. Venue is appropriate pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391, as acts and omissions forming the basis of this civil action occurred in the Austin and San Antonio Divisions of the Western District of Texas.

### IV. Administrative Efforts

16. Plaintiff filed a complaint against Jubilee Academic Center alleging interference and retaliation in violation of the 1993 Family and Medical Leave Act 29 U.S.C. §§ 2611-2619 ("FMLA") with the Department of Labor, Wage and Hour Division, San Antonio office, on or about September 12, 2016 . Plaintiff is in receipt of notification of findings, and references:

> "....actions taken by (Jubilee Academic Center) were not in accordance with the FMLA. We determined your rights were violated as a result of their actions."
>
> -- U.S. Department of Labor *Letter of Determination*, July 17, 2017 (Exhibit "A")

17. Ms. Wynne filed complaints with the Austin Equal Employment/Fair Housing Office ("Austin EEO") on or about January 7, 2017, and with the Texas Education Agency, Office of Civil Rights ("OCR") on or about March 2, 2017 pursuant to federal statute distinct from FMLA allegations. Plaintiff alleges only FMLA violations in this Original Complaint, but references Defendant's "Position Statement" and affidavits sworn by Sam Cofer and Schneider submitted to Austin EEO, herein, as testimony relevant to employers' proffered rationale for termination.

18.     Plaintiff and Defendants Sam Cofer and Blake Schneider provided sworn testimony on or about December 14, 2016 during telephone conference participation in Texas Workforce Commission ("TWC") Appeal No.2110274-1, initiated by plaintiff in opposition of denial of Unemployment Benefits by Jubilee Academic Center.  Reference to TWC testimony are presented, herein, as evidence relevant to defendants' proffered rationale justifying Ms.Wynne's termination.

## V. Relevant Facts

19.     Plaintiff's sister, Melody Wynne ("Melody"), born 8/65, is permanently mentally disabled, her medical and psychological diagnoses satisfying "serious medical condition" provision of 29 U.S.C. § 2611 (11)(A)(B), as requiring continuing medical and pharmacological treatment by multiple health care providers, and having endured recurring emergency psychiatric hospitalizations, common to those struggling with her disorder, in the decade and particularly the 18 month span immediately preceding Plaintiff's attempt to secure FMLA participation and protection.

20.     Parties are not in dispute with regard to existence of Melody's disability:

21.     Jubilee concedes, "Based on your communications, the extent of your sister's illness is not at issue." in post-termination letter received by Plaintiff on or about September 2, 2016 (Exhibit "B").

18. A decades-long pattern of Plaintiff's intervening on her sister's behalf is established, exemplified by provision of psychological comfort, reassurance in crisis, and acting in Melody's interest when her sister was mentally incapacitated, incapable of self-care.

19. Plaintiff studied psychology as an undergraduate, working full-time on the Intensive Care Unit of a co-ed Residential Treatment Center for Adolescents to support herself, pay tuition and expenses while simultaneously attaining her Bachelor's Degree from The University of Texas.

20. Plaintiff's familiarity with psychiatric settings and treatment protocol, coupled with the extraordinarily close lifelong bond and abiding affinity shared mutually between Deidra and Melody Wynne has resulted in the natural evolution of Plaintiff voluntarily assuming an "in loco parentis" role to her disabled sister.

21. Melody's psychological and cognitive functioning mysteriously and dramatically altered in March of 2015, marked by unprecedented behavioral disruption, emotional instability, and sustained periods of psychosis. Theses symptoms rendered Plaintiff and Melody's parents incapable of keeping Melody safe, and necessitated admission to Shoal Creek Psychiatric Hospital on or about March of 2015.

23. Plaintiff routinely visited her sister in Shoal Creek Psychiatric Hospital, providing significant psychological comfort and trusted assurance similar to, "We're going to get answers, get you back to good" as Melody looked to her sister for an emotional foothold, beseeched Plaintiff, "Dee Dee... have I had a stroke?"

24.     Plaintiff insisted the sisters' parents, in their seventies, allow Deidra to visit the psychiatric unit, convey their love to their child, and provide updates.  Plaintiff attests that Melody's unrecognizable affect, posture, slurred speech, drooling, and being locked behind a series of doors and partitions not different from those in a prison setting would obviously and inarguably overwhelm and profoundly trouble the girls' parents.

25.     In such capacity, Plaintiff continued to voluntarily demonstrate intensifying "in loco parentis" standing to Melody, a female, who, under FMLA statute, qualifies Plaintiff for FMLA participation as "a child of *a person standing in loco parentis* who is 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611 (12)(B), emphasis added.

26.     The Family and Medical Leave Act provides substantive employment protection and rights to those struggling to care for a qualifying family member.  An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period, in order to care for the spouse, or a son, *daughter*, or parent, of the employee, if such spouse, son, *daughter* or parent has a serious health condition. 29 U.S.C. § 2612 (a)(1)(C), emphasis added.

27.     Following extensive evaluation while in Austin State Hospital, Melody was diagnosed with Major Neurocognitive Disorder, Vascular Dementia, in December of 2015.

28.     Plaintiff collected her sister on release from Austin State Hospital on or about

January 28, 2016, ending approximately five months of institutionalization there, including all most revered family gatherings and holidays.

29. Manifestations of Vascular Dementia, in addition to pervasive psychiatric and medical challenges predating 2015, have rendered Melody incapable of self-care.

30. After careful evaluation of Melody's care and medication needs, observing her extraordinary return to recognizable form, Plaintiff and the girls' parents reasoned, in the first 3 months of 2016, that a collaborative and concerted "tag-team" family effort might meet Melody's needs, keep her stable and at home.

31. Plaintiff went under contract to purchase a home in Burnet County, Tx, for Melody, as her decade-long two-story rented residence would no longer meet her needs.

32. Plaintiff orchestrated verifiable proactive measures to orchestrate the home purchase, the change in Melody's care during the more relaxed summer months of her work at Athlos.

## VI. Allegations

### Count I:   FMLA Interference

33.     Plaintiff incorporates an realleges, in full, paragraphs 1-32 of this Original Complaint.

34.     At all times material to this action, Defendants have retaliated and/or interfered with , restrained, and denied to Plaintiff the exercise of and attempted exercise of her rights under Section 2615 (a)(1)(2) of the FMLA by the following acts and omissions:

35.     Blake Scheider interfered with Plaintiff's attempt to exercise FMLA rights when she alerted him early on August 8, 2016 that she required the day off to complete the task of making a change in her sister's care, completing the move to the new home she'd purchased.

36.     Review of Ms. Wynne's texts and video submitted to Schnedier on August 8th reveal she was opening communicating a struggle to balance work and family responsibilities.

37.     FMLA Statute and Jubilee's own Board Policy Manual articulate that an employee need not invoke FMLA by name, but that the employee must provide enough information for the employer to know that the leave may be covered byFMLA, and when and how much leave the employee intends to take.

38.     Schneider failed to investigate or attempt to understand Ms. Wynne's circumstance with more clarity, offered no response to her subsequent communications on August 8, 2016.

39.     Schneider flatly ignored three attempts by Ms. Wynne on Tuesday August 9, 2016, to meet together, communicate about the events leading up to and including the previous day's absence.

40.     Plaintiff alleges that dialogue exchanged with Schneider in the summer of 2016 related to her stepping up to care for her disabled sister constitutes "Notice" in accordance with 29 CFR § 825.303, to which Schneider made no effort to clarify, constituting interference with her right under FMLA.

41.     Plaintiff alleges that every of Ms. Wynne's documented attempts to engage Schneider in dialogue related to her need for August 8th off, were "Notice" in accordance with 29 CFR § 825.303, were ignored and represent interference under 29 U.S.C § 2615.

42.     Plaintiff alleges that HR Chief Sam Cofer "interfered with, restrained, denied the exercise and the attempt to exercise" FMLA rights,, in the course of documented email communication initiated by Ms. Wynne on August 9, 2016 through August 12, 2016 (Exhibit "C")

43.     Plaintiff alleges Sam Cofer interfered with, dissuaded, and denied Ms. Wynne's "attempt to use" FMLA when, in said email dialogue, Ms.Wynne depended on his professional responsibilities and expertise related to his job title to respond to specific questions about FMLA coverage for caregivers of permanently disabled siblings. Cofer failed to immediately, to ever, provide "Rights and Responsibilities Notice", instead expressing lack of familiarity, uncertainty, conjecture, expressions of empathy and false assurance that Jubilee would like to (simulate

FMLA protection), "even if you don't qualify". These actions are in violation of 29 U.S.C § 2615 (1).

44.     Sam Cofer provided Ms. Wynne FMLA family member certification on the fourth day of email exchange, on Friday, August 12, 2016, and only in response to Wynne having forwarded FMLA Fact Sheet 28B, detailing "in loco parentis" provision, and specifically requesting to get FMLA participation in place over concerns that a change of leadership in the years Wynne wished to remain with Jubilee might complicate any informal arrangement he'd written about, "absent FMLA participation".

45.     Cofer responded to Wynne's forwarding "in loco parentis" email with, "Thank you for this, Deidra. Very enlightening…….and closed with, "I have attached an application for FMLA that you can use when the time comes and we will approve it." Ms. Wynne was terminated by Blake Schneider seven days later.

46.     Wynne alleges that no person employed in any capacity by Jubilee Academic Center ever provided her "Rights and Responsibilities" notice, required by FMLA statute, which resulted in the denial of her "attempt to exercise" FMLA rights prohibited by 29 U.S.C § 2615(a)(1). Had Wynne been apprised of her rights, in accordance with FMLA statute, she may have arranged to take more than one day off during the week of August 8, for example, to provide psychological comfort to her sister struggling with Dementia and facing relinquishment of her home, profound change in routine.

## Count II: FMLA Retaliation

47.   Plaintiff alleges that her abrupt and unsubstantiated termination by Blake Schneider on August 19, 2016 represents unlawful, willful retaliation for having asserted her FMLA rights.

48.   Blake Schneider was forwarded Ms. Wynne's four-day email exchange with HR Chief Sam Cofer at mid-day on August 12, 2016, in which she attempted again to inform her employers of her relationship as caregiver to her permanently disabled sister. The mail thread included great specificity of her circumstances, and applicable "in loco parentis' FMLA Statute Ms. Wynne had provided to Cofer in the email. (Exhibit "D")

49.   Plaintiff alleges Schneider demonstrated willful, reckless indifference to protections afforded employees by federal statute, and to Ms. Wynne's FMLA rights when he never acknowledged her FMLA assertions in email thread provided him on August 12, 2016.

50.   Plaintiff alleges that firing an employee hours after, "Meet the Teacher", and one day prior to the outset of the school year represents unlawful and willful retaliatory animus.

51.   Parties agree that justification for Wynne's termination was presented to Wynne for the first time in the post-termination letter received by her on September 2, fourteen days after her termination (Exhibit "B"),

52.     Plaintiff alleges that the post-termination letter is direct evidence of post-termination retaliation exacted in response to Wynne having emailed Cofer on August 28, 2019 opposing her illegal termination.

53.     Plaintiff alleges Defendants acted in concert to intimidate Wynne into requesting resignation status, threatening her with tactics specifically noted by the U.S. Supreme Court as indicative of post-employment retaliation, notably conditionalizing the issuance of employment references, and denying Unemployment Benefits in the absence of documented performance issues.

54.     Plaintiff asserts that defendants are equitably estopped from challenging Wynne's FMLA eligibility (as in the post-termination letter) because Sam Cofer 1) offered assurance of eligibility to Wynne seven days before her termination, 2) she relied on that promise, 3)she suffered the detriment of termination by 4) unconscionable actions at the hands of her employees.

55.     Plaintiff alleges Cofer and Schneider willfully violated 18 U.S.C.§ 1621 by falsifying the school campus Wynne was employed on in sworn affidavits filunconsciounabed with the Austin EEO a fact very material to this civil action, and supporting Wynne's allegations of pretext in Jubilee's proffered explanation for firing.

**Timeliness**

56. FMLA Statute of Limitations is established as two years from the most recent act constituting violations, three years in cases involving willful violations.

57. Plaintiff re-alleges that irrefutable documentation consistently illustrates willful acts.

58. Plaintiff alleges that the post-termination letter of September 2, 2016 is direct evidence of willful post-employment retaliation.

59. Plaintiff includes evidence of an email exchange with Adam Courtin, Counsel for Defendants, dated July 24, 2017. Courtin responds to Wynne's lamentation that she is, indeed, struggling to secure a teaching position, 18 months on the heels of termination, just as Jubilee promised. Courtin's reiteration of the post-termination retaliation evidenced in the letter of September 2, 2016, illustrates that the "last act" related to this civil action has not ceased.

60. Courtain's restatement of the post-termination control over references is dated within two years of this filing.

Plaintiff demands Jury Trial

*/s/ Deidra Wynne* 7/23/19

Deidra Wynne
pro se