IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEIDRA WYNNE | § § | |
| Plaintiff | § | |
| v. | § § | No. A-19-CV-00739-JRN |
| JUBILEE ACADEMIC CENTER, INC | § | |
| TOM KOGER, in individual capacity | § | |
| DANIEL AMADOR, in individual capacity | § | |
| BLAKE SCHNEIDER, in individual capacity | § | |
| SAM COFER, in individual capacity | § § | |
| Defendants | § | |

**FIRST AMENDED COMPLAINT**

Plaintiff, DEIDRA WYNNE, files this First Amended Complaint as revision to Original Complaint filed in the Western District of Texas, Austin Division, on October 23, 2019. As a result of subsequent discovery not available to plaintiff at time of the Original Complaint, plaintiff seeks to clarify allegations against Defendants Jubilee Academic Center, Inc, Tom Koger, in his individual capacity, Daniel Amador, in his individual capacity, Sam Cofer, in his individual capacity, and Blake Schneider, in his individual capacity, and by way of complaint against defendants alleges the following:

### I. Nature of Action

1. This jury action seeks redress for Defendants' willful violations of the laws of the United States in connection with interference and discriminatory acts and omissions, unlawful termination and post-employment retaliation exacted as Plaintiff:

  A. attempted to exercise rights and protections afforded her pursuant to "*in loco parentis*" provisions of the Family and Medical Leave Act ("FMLA") 29 U.S.C § 2601 *et. seq.*, and

  B. Opposed her subsequent termination as unlawful, in violation of FMLA Statute.

## II. Parties

3.  Plaintiff Deidra Wynne ("Ms. Wynne", or "Wynne", or "Deidra", or "Dee Dee") is female and a registered voter in this judicial district, the Western District of Texas, residing in Williamson County: 108 Ridgewood Dr., Georgetown, Texas, 78628. Ms. Wynne is a teacher.

4.  Defendant Jubilee Academic Center ("Jubilee" or "JAC") is a Public Charter School Corporation, headquartered at 4434 Roland Rd, San Antonio, Texas, 78222. Plaintiff is informed and believes that Jubilee operates approximately twelve public charter schools in the Austin, San Antonio, Brownsville, Kingsville, and Harlingen regions of Texas.

5.  Jubilee employs more than 50 employees in a 75 mile radius of Wynne's former campus, and is "covered employer" in accordance with FMLA 29 U.S.C.§ 2611(4)(A)(i).

6.  Jubilee is "covered employer" under 29 C.F.R. § 825.104(a) and 29 C.F.R § 825.600(b), irrespective of number of employees, as it operates public elementary and secondary schools.

7.  Ms. Wynne was employed full-time on a 220-day per year work assignment with Jubilee for two full school years beginning on or about August 7, 2014 and until abrupt termination on August 19, 2016.

8.  Ms. Wynne is "eligible employee" pursuant to 29 U.S.C.§ 2611(2)(A), having exceeded 1,250 hours worked as Jubilee's employee at "Athlos Leadership Academy, Austin" in the 12 month period immediately preceding assertion of FMLA participation and protection.

9.  Tom Koger ("Mr. Koger", "Koger") holds positions of Chief Executive Officer and Director of Schools for Jubilee Academic Center, is appointed Chairman of the Executive Board and President of every of Jubilee's five Regional School Boards. Mr. Koger has held these positions for the duration of Wynne's employment and all actions pertinent to this civil action. Plaintiff is informed and believes that Koger resides in Bexar County, cannot verify his physical address at time of filing, and shall execute service through Jubilee counsel of record.

10. Tom Koger is "employer" under U.S.C. 29 § 2611 (4)(B) identifying "a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce" and (4)(A)(ii)(l) as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Additionally, Tom Koger meets FLSA definition of "employer" through the authority to 1) hire and fire employees, 2) supervise and control work schedules and conditions of employment 3) determine the rate and method of payment, and 4) maintain employment records. The authority provided to and accountability required of Mr. Koger, in his individual capacity, is outlined in The Texas Education Code, and Jubilee Board Policy.

11. Daniel Amador ("Mr. Amador", "Amador") serves as "Superintendent of Schools" for all of Jubillee's public charter school campuses, and has held this position during all of Wynne's employment and all actions related to this civil action. Plaintiff is informed and believes that

Mr. Amador resides in Bexar County, cannot verify his physical address at time of filing, and shall execute service through Jubilee counsel of record.

12. Daniel Amador is "employer" under U.S.C. 29 § 2611 (4)(B) "a public agency shall be considered to be a person engaged in commerce or in an industry or activity affecting commerce" and U.S.C. 29 § 2611(4)(A)(ii)(l) "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Daniel Amador meets FLSA definition of "employer" through the authority to 1) hire and fire employees, 2) supervise and control work schedules and conditions of employment, 3) determine the rate and method of payment, and 4) maintain employment records. The authority provided to and accountability required of Mr. Amador, in his individual capacity, is outlined in The Texas Education Code and Jubilee Board Policy.

13. David Sam Cofer ("Sam", or "Mr. Cofer", or "Cofer") served as Jubilee Director of Human Resources throughout Wynne's time as compensated employee. Plaintiff is informed and believes Mr. Cofer's residence to be in Guadalupe County, 461 Silver Buckle Dr., Schertz, Tx, 78154.

14. Sam Cofer is "employer" under U.S.C. 29 § 2611 (4)(ii)(l), as he acts directly or indirectly in the interest of Jubilee to employees of Jubilee by: controlling conditions of employment, determining the rate and method of payment, and maintaining employment records.

15. Blake Schneider ("Schneider" or "Blake") began employment with Jubilee as Assistant Director of Athlos Leadership Academy, the Jubilee campus on which Ms. Wynne reported, beginning on or about January, 2015 and through the duration of Wynne's paid employment.

4

16.     Plaintiff is informed and believes that Blake Schneider resides in Williamson County, 1801 Tanner Loop, Taylor, Tx, 76574.

17.     Mr. Schneider is "employer"in his capacity as he: hired and fired employees, supervised and controlled employee work schedules and conditions of employment, retained records, and acted directly and indirectly in the interest of Jubilee to employees of Jubilee in accordance with FMLA U.S.C. 29 § 2611 (4)(ii)(l).

### III. Jurisdiction and Venue

14.     This Court has federal question jurisdiction over the subject matter of Plaintiff's claims having arisen under federal laws 29 U.S.C.§ 2617 and  28 U.S.C. § 1331. .

15.     Venue is appropriate pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391, as acts and omissions forming the basis of this civil action occurred in the Austin and San Antonio Divisions of the Western District of Texas.

### IV. Administrative Efforts

16.     Plaintiff filed a complaint against Jubilee Academic Center alleging interference and retaliation in violation of the 1993 Family and Medical Leave Act  29 U.S.C. §§  2611-2619 ("FMLA") with the Department of Labor, Wage and Hour Division, San Antonio office, on or about September 12, 2016 . Plaintiff is in receipt of notification of findings, and references:

"....actions taken by (Jubilee Academic Center) were not in accordance with the FMLA.   We determined your rights were violated as a result of their actions."

-- U.S. Department of Labor *Letter of Determination*, July 17, 2017 (Exhibit "A")

Plaintiff submitted a Freedom of Information Act request for the file related to the Department of Labor  investigation on February 12, 2019 (Exhibit E), and was provided the

5

"WHISARD Compliance Action Report, U.S. Department of Labor, Wage and Hour Division" (Exhibit "F") on December 6, 2019.

17. Ms. Wynne filed complaints with the Austin Equal Employment/Fair Housing Office ("Austin EEO") on or about January 7, 2017, and with the Texas Education Agency, Office of Civil Rights ("OCR") on or about March 2, 2017 pursuant to violations of federal statute distinct from the Family and Medical Leave Act. Plaintiff alleges only FMLA violations in this civil action, but references "Defendant's Position Statement" and affidavits sworn by Sam Cofer and Schneider submitted to Austin EEO, herein, as testimony of employers' proffered rationale for termination.

18. Plaintiff and Defendants Sam Cofer and Blake Schneider provided sworn testimony on or about December 14, 2016 during telephone conference participation in Texas Workforce Commission ("TWC") Appeal No.2110274-1, initiated by plaintiff in opposition of denial of unemployment benefits by Jubilee Academic Center. Jubilee's documentation provided to TWC and sworn testimony provided by Schneider and Cofer during the Appeal conference is relevant to defendants' proffered rationale justifying Ms.Wynne's termination.

## V. Relevant Facts

19. Plaintiff's sister, Melody Wynne ("Melody"), born August 1965, is permanently mentally disabled, her medical and psychological diagnoses satisfying "serious medical condition" provision of 29 U.S.C. § 2611 (11)(A)(B), as requiring continuing medical and pharmacological treatment by multiple health care providers, and having endured recurring emergency psychiatric hospitalizations common to those struggling with her disorder, in the decade and particularly the

6

18 month span immediately preceding Plaintiff's attempt to secure FMLA participation and protection.

20. Deidra Wynne was provided a FMLA Medical Certification Form WH-380 by Sam Cofer email on August 12, 2016, follwing four days of email exchange regarding FMLA protection, and in response to Wynne's request to get FMLA participation into place.

21. Wynne was terminated 7 days later , August 19, 2016.

22. Wynne opposed her termination in e-mail to HR Director Sam Cofer on August 25, 2016.

23. On August 28 Wynne provided Sam Cofer an Austin State Hospital discharge page (Exhibit "G") that had been provided her when she collected her sister on release 7 months earlier. The page is signed by a physician, dated January 26, 2016, identifies medication protocol, including dosages and frequency, and the purpose of each medication is noted. Melody's discharge paper spells out "Psychosis", "Anxiety", "Mood Stabilization", and "Sialorrhea". A quick "google" search reveals that sialorrhea means…"excessive drooling".

24. Wynne apologized for the drawings and markings on the paper, explaining to Cofer that she crafted those mnemonics in an effort to assist the girls' mother, Barbara Wynne, in making sense of the myriad of med names, dosages, times to provide.

25. Parties are thus not in dispute with regard to existence of Melody's disability. Jubilee concedes, "Based on your communications, the extent of your sister's illness is not at issue." in post-termination letter received by Plaintiff on or about September 2, 2016 (Exhibit "B").

26. A decades-long pattern of Plaintiff's intervening on her sister's behalf is established, exemplified by provision of psychological comfort, reassurance in crisis, and acting in Melody's interest when her sister was mentally incapacitated, incapable of self-care.

27. Plaintiff studied psychology as an undergraduate, working full-time on the intensive care unit of a co-ed residential treatment center for adolescents to support herself, pay room and board, tuition and expenses while simultaneously attaining her Bachelor's Degree from The University of Texas.

28. Plaintiff's familiarity with psychiatric settings and treatment protocol, coupled with the extraordinarily close lifelong bond and abiding affinity shared mutually between Deidra and Melody Wynne has resulted in the natural evolution of Plaintiff voluntarily assuming an "in loco parentis" role to her disabled sister.

29. Melody's psychological and cognitive functioning mysteriously and dramatically altered in March of 2015, marked by unprecedented behavioral disruption, emotional instability, and sustained periods of psychosis. Theses symptoms rendered Melody incapable of staying in her home alone, and she stayed with Plaintiff and Melody's parents as they attempted to watch over her. Ultimately, Melody's needs for intervention required she be admitted to Shoal Creek Psychiatric Hospital in or about March of 2015.

30. Plaintiff routinely visited her sister in Shoal Creek Psychiatric Hospital, met with nursing and medical staff while providing significant psychological comfort and trusted assurance to her sister similar to, "We're going to get answers, get you back to good" as Melody looked to her for an emotional foothold, implored Plaintiff, "Dee Dee... have I had a stroke?"

31. Plaintiff insisted the sisters' parents, in their seventies, allow Deidra to visit the psychiatric unit, engage with staff members, convey their love to their child, and provide updates. Plaintiff attests that Melody's unrecognizable affect, posture, slurred speech, drooling, and being locked behind a series of doors and partitions not unlike those in a prison setting would obviously and inarguably overwhelm and profoundly trouble the girls' parents.

32. Plaintiff took initiative to seek long-term residential options for Melody, including a group home recommended by personnel of Shoal Creek Hospital. Deidra and Barbara Wynne, the girls' mother, arranged residential admission and on July 7, 2015 Deidra set out to transport Melody immediately from Shoal Creek to the door of God's Blessings Group Home in Belton, Texas.

33. "God's Blessings" proved a substantial misnomer. When Melody began to show symptoms common to her recurring issues with development of blood clots in her legs, the nurse did arrange for her to be transported to Scott & White Medical Center in Temple.

34. Barbara Wynne and Deidra Wynne both received telephone voicemail from a female member of the nursing staff at Scott & White, alerting them, "I will not release her to the individual serving as her attendant from God's Blessings. I recognize this individual from frequent ER visits." When Deidra, out of town on travel, returned the call to the ER, the same nurse related that the attendant was, in her experience, "a frequent user of illegal drugs".

35. Barbara Wynne immediately drove to Scott & White Hospital, Temple, to retrieve her daughter. Melody's stay in "God's Blessings" was discontinued by her family after 9 days. Weeks later, Melody recounted that, en route to the hospital that day....for emergency treatment, two women affiliated with the group home had taken her not to the hospital, but first to the

Social Security Administration in Georgetown, where they managed to have one of them designated as new recipient of Melody's Social Security Disability monthly disbursements. Deidra Wynne telephoned the office in Georgetown immediately, and an employee corroborated Melody's account of the events.  The employee remembered that Melody had been "slumped, seated on the floor" as the change in recipient was executed by the women.  Melody would have had to endorse the change, and SSA staff couldn't answer Deidra's inquiry as to why an incapacitated indvidual slumped on the floor might be briefly separated from two individuals of easily identifiable different race and questioned as to who the individuals are, if she needed immediate medical assistance, and perhaps, "Maybe would you like to call your mom who is the sole individual having ever been designated your benefits recipient for just under twenty years?"

36.     On Melody's birthday, August 5, 2015, Deidra Wynne dialed the number for The Texas Department of Aging and Disability, and Melody filed a report detailing her experiences.  Hers, and others, resulted in immediate investigation and intervention.  "God's Blessings" was the subject of a series of investigations by local NBC affiliate KXAN weeks later, as elderly and incapacitated residents in the Austin location had been kept without air conditioning for days….in August.

37.     Melody and Deidra Wynnes' parents again took Melody into their home, but...ultimately, she required admission to Austin State Hospital in September of 2015.  Following extensive evaluation while in Austin State Hospital, Melody was diagnosed with Major Neurocognitive Disorder, Vascular Dementia, in December of 2015.

38. Plaintiff collected her sister and newly prescribed psychopharmacological protocol on release from Austin State Hospital on or about January 28, 2016, ending approximately five months of institutionalization, including all most revered family gatherings and holidays.

39. In such capacity, Plaintiff continued to voluntarily demonstrate intensifying "in loco parentis" standing to Melody, a female, who, under FMLA statute, qualifies Plaintiff for FMLA participation as "a child of *a person standing in loco parentis* who is 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611 (12)(B), (emphasis added).

40. The Family and Medical Leave Act provides substantive employment protection and rights to those struggling to care for a qualifying family member. An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period, in order to care for the spouse, or a son, *daughter*, or parent, of the employee, if such spouse, son, *daughter* or parent has a serious health condition. 29 U.S.C. § 2612 (a)(1)(C), (emphasis added).

41. Wynne provided link to Department of Labor Fact Sheet 28B (Exhibit H or to Sam Cofer in the aforementioned email of August 12, 2016. The page represents a "quick reference" of FMLA Statute related to "in loco parentis", features illuminated hyperlinks that, when clicked on, direct the reader to the specific FMLA subchapter. Fact Sheet 28B includes language related to Wynne's circumstances, identifying "in loco parentis" as:

"a relationship in which a person puts himself or herself in the situation of a parent by assuming and discharging the obligations of a parent to a child." "Son or daughter" is defined, on the Fact Sheet, as "children under the age of 18 or 18 years of age or older and incapable of self-care because of a mental or physical disability.

The reader is directed "see 29 USC 2612(12)" with a live hyperlink to FMLA Statute.

Additionally, the Fact Sheet specifies:

11

"Although no legal or biological relationship is necessary...grandparents or other relatives, such as siblings, may stand *in loco parentis* to a child under the FMLA as long as the relative satisfies the *in loco parentis* requirements."

And, on the subsequent page of the DOL Fact Sheet provided by Wynne to JAC HR Director Cofer one week prior to her termination:

"The fact that a child has a biological parent in the home, or has both a mother and a father, does not prevent and employee from standing in loco parentis to that child. The FMLA does not restrict the number of parents a child may have."

42. After careful evaluation of Melody's care and response to medications, realization that she had been virtually institutionalized for the entirely of 2015, and observing her extraordinary return to recognizable form with the medication protocol initiated at Austin State Hospital, Plaintiff and the girls' parents reasoned, in the first 3 months of 2016, that a collaborative, concerted "tag-team" family effort might meet Melody's needs, keep her safe, stable and residing at home.

43. Plaintiff went under contract to purchase a home in Burnet County, Tx, for Melody, as her decade-long two-story rented residence was no longer appropriate.

44. Plaintiff engaged in verifiable proactive measures to orchestrate the home purchase, get Melody (and caregivers) settled in, all related to executing a substantial change in Melody's care, during the more relaxed summer months of her work at Athlos.

45. When "closing" of the home was repeatedly delayed, for example, Wynne approached Blake Schneider and was granted permission to work through the two week early July JAC designated closure for employees on 220 day schedule, and push her 10 days off right up against August 8, the beginning of Teacher Inservice.

46.     It should be noted that Melody Wynne was cared for in the home plaintiff purchased, in accordance with the "tag-team" plan undertaken by her sister and the girls' parents, through Wynne's period of unemployment after illegal termination, and continuing after she finally was employed as a teacher again. Melody's family "made good" on their assurance to her that they'd take care of her as long as humanly possible. Melody was admitted to a residential nursing care center in Marble Falls, Tx in May of 2019.

## VI.  Allegations

### Count I:   FMLA Interference

47.     Plaintiff incorporates an realleges, in full, paragraphs 1-31 of this Original Complaint.

48.     At all times material to this action, Defendants have retaliated and/or interfered with , restrained, and denied to Plaintiff the exercise of and attempted exercise of her rights under Section 2615 (a)(1)(2) of the FMLA by the following acts and omissions:

49.     Blake Scheider interfered with Plaintiff's attempt to exercise FMLA rights when she alerted him early on August 8, 2016 that she was "physically and emotionally spent...had planned to work late into the night and then drive to Georgetown, and to work this morning but am incapable. I've reached my limit." Wynne followed Jubilee absence protocol, requesting the day off to complete the task of making a change in her sister's care, completing the move to the new home she'd purchased.

50.     Review of Ms. Wynne's texts and a selfie video submitted to Schnedier on August 8th to clarify for him her location and circumstances reveal she was openly communicating a struggle to balance work and family responsibilities, and that Schneider made no effort to engage with her in dialogue on that day.

51.     FMLA Statute and Jubilee's own Board Policy Manual articulate that an employee need not invoke FMLA by name, but that " the employee must provide enough information for the employer to know that the leave may be covered byFMLA, and when and how much leave the employee intends to take"

52.     Schneider failed to investigate or attempt to understand Ms. Wynne's circumstance with more clarity, offered no response to her subsequent communications on August 8, 2016.

53.     Schneider flatly ignored three attempts by Ms. Wynne on Tuesday August 9, 2016, to meet together, communicate about the events leading up to and including the previous day's absence.

54.     Plaintiff alleges that dialogue exchanged with Schneider in the summer of 2016 related to her stepping up to care for her disabled sister provided him with adequate information to understand she was to become a caregiver.

55.     Plaintiff alleges that every of Ms. Wynne's documented attempts to engage Schneider in dialogue related to her need for August 8th off, were "Notice" in accordance with 29 CFR § 825.303, were ignored and represent interference under  29 U.S.C § 2615.

56.     Plaintiff alleges that HR Chief Sam Cofer "interfered with, restrained, denied the exercise and the attempt to exercise" FMLA rights,, in the course of documented email communication initiated by Ms. Wynne on August 9, 2016 through August 12, 2016.

57.     Plaintiff alleges Sam Cofer interfered with, dissuaded, and denied Ms. Wynne's "attempt to use" FMLA when, in said email dialogue, Ms.Wynne depended on his professional responsibilities and expertise related to his job title to respond to specific questions about FMLA coverage for caregivers of permanently disabled siblings.  Cofer failed to immediately, to ever,

provide "Rights and Responsibilities Notice", instead expressing lack of familiarity, uncertainty, suggestion that "maybe you could get a doctor to sign off that you care for your parents and she could just be "in the room" :)", expressions of empathy and false assurance that Jubilee would like to (simulate FMLA protection), "even if you don't qualify". These actions are in violation of 29 U.S.C § 2615 (1). Wynne alleges that Sam Cofer either knew or showed reckless disregard for the matter of whether his respective conduct was prohibited by statute.

58. Sam Cofer provided Ms. Wynne FMLA family member certification on the fourth day of email exchange, on Friday, August 12, 2016, and only in response to Wynne having forwarded FMLA Fact Sheet 28B, detailing "in loco parentis" provision, and specifically requesting to set FMLA participation in place over concerns that a change of leadership in the years Wynne wished to remain with Jubilee might complicate any informal arrangement he'd written about, absent FMLA participation.

59. Cofer responded to Wynne's forwarding "in loco parentis" email with, "Thank you for this, Deidra. Very enlightening."…..and closed with, "I have attached an application for FMLA that you can use when the time comes and we will approve it." Ms. Wynne was terminated by Blake Schneider seven days later.

60. Wynne alleges that no person employed in any capacity by Jubilee Academic Center ever provided her "Rights and Responsibilities" notice, required by FMLA statute, which resulted in the denial of her "attempt to exercise" FMLA rights prohibited by 29 U.S.C § 2615(a)(1). Had Wynne been apprised of her rights, in accordance with FMLA statute, she may have arranged to take more than one day off during the week of August 8, for example, to provide psychological

comfort to her sister struggling with Dementia and facing relinquishment of her home, profound change in routine.

### Count II:  FMLA Retaliation

61.	Plaintiff incorporates an realleges, in full, paragraphs 1-60 of this Original Complaint.

62.	Plaintiff alleges that her abrupt and unsubstantiated termination by Blake Schneider on August 19, 2016 represents unlawful, willful retaliation for having asserted her FMLA rights.

63.	Blake Schneider was forwarded Ms. Wynne's four-day email exchange with HR Chief Sam Cofer at mid-day on August 12, 2016, in which she attempted again to inform her employers of her relationship as caregiver to her permanently disabled sister.  The mail thread included great specificity of her family circumstances, link to Fact Sheet 28B, the applicable "in loco parentis' FMLA Statute Ms. Wynne had provided to Cofer in the email.

64.	Plaintiff alleges Schneider demonstrated willful, reckless indifference to protections afforded employees by federal statute, and to Ms. Wynne's FMLA rights when he never acknowledged her FMLA assertions in email thread provided him on August 12, 2016.

65.	Wynne asserts that a preponderance of the evidence indicates Schneider either knew or showed reckless disregard for the matter of whether his conduct was prohibited by statute.

66.	Plaintiff alleges that the act of abruptly firing her mere hours after, "Meet the Teacher", and one day prior to the outset of the school year, in the absence of documented performance problems  illustrates unlawful and willful retaliatory animus.

67.	Plaintiff alleges Wynne's termination was presented to Wynne for the first time in the post-termination letter received by her on September 2, fourteen days after her termination (Exhibit "P2"),

68. Plaintiff alleges that the post-termination letter is direct evidence of post-termination retaliation exacted in response to Wynne having emailed Cofer on August 28, 2019 opposing her illegal termination.

69. Plaintiff alleges Defendants acted in concert to intimidate, coerce Wynne into requesting resignation status, willfully engaging in tactics specifically noted by the U.S. Supreme Court as indicative of post-employment retaliation, notably conditionalizing the issuance of employment references, and denying unemployment benefits in the absence of documented performance issues.

70. Plaintiff asserts that defendants are equitably estopped from challenging Wynne's FMLA eligibility (as in the post-termination letter) because Sam Cofer 1) offered assurance of eligibility to Wynne seven days before her termination, 2) she relied on that promise, 3)she suffered the detriment of termination by 4) unconscionable actions at the hands of her employers.

71. Plaintiff alleges Tom Koger, Daniel Amador, Sam Cofer and Blake Schneider willfully violated 18 U.S.C.§ 1621 by falsifying the school campus Wynne was employed on, changing the campus to which she reported for two full years to one she did not report to, in sworn affidavits and "Employer Position Statement" filed with the Austin EEO on or about March 6, 2017. This, a fact very material to this civil action, and supporting Wynne's allegations of pretext in Jubilee's proffered explanation for firing.

72. Tom Koger and Daniel Amador, in their respective individual capacities, bear accountability for the behavior of subordinates, for not providing a grievance conference immediately on receipt of Wynne's opposition to her termination, for directing or allowing false record of Wynne's work performance to be put forth, and for launching the post-termination

retaliation exacted against Wynne in the official JAC letterhead letter sent her on September 2, 2016. Tom Koger and Daniel Amador, individually, consistently either knew or showed reckless disregard for the matter of whether his respective conduct was prohibited by statute.

## Timeliness

73. FMLA Statute of Limitations is established as two years from the most recent act constituting violations, three years in cases involving willful violations.

74. Plaintiff realleges that irrefutable documentation consistently illustrates willful acts.

75 Plaintiff alleges that the post-termination letter of September 2, 2016 is direct evidence of willful post-employment retaliation. Plaintiff sites evidence of email exchange with Adam Courtin, Counsel for Defendants, dated July 24, 2017. Courtin responds to Wynne's notification that she is, indeed, struggling to secure any teaching position 11 months on the heels of te rmination, just as Jubilee had assured in the post-termination letter. Courtin's reiteration, in said email, of the post-termination retaliation evidenced in the letter of September 2, 2016, illustrates that the "last act" related to this civil action has not yet ceased.

76. Courtin's restatement of the post-termination control over references and separation status is dated within two years of this filing.

## Prayer for Relief

Plaintiff prays for and demands all legal and equitable relief, individual liability of each defendant, including back pay, front pay, lost benefits, liquidated damages, prejudgement and postjudgment interest, court costs, attorney fees incurred in the event Plaintiff should secure representation at any stage of this civil action, and any and all relief determine appropriate by The Court.

Respectfully submitted,

*[signature]*
1/31/20

Deidra Wynne  Plaintiff pro-se
108 Ridgewood Dr
Georgetown, Tx 78628
512-277-0271
wynne2saywynne@gmail.com